591 P.2d 1336 (1978)
Albert MARIN, Plaintiff-Appellant,
v.
COLORADO DEPARTMENT OF REVENUE, Alan N. Charnes, Executive Director of the Colorado Department of Revenue, Jon A. Rogers, Hearing Officer of the Colorado Department of Revenue, and George Theobald, Chief Hearing Officer of the Colorado Department of Revenue, Defendants-Appellees.
No. 78-430.
Colorado Court of Appeals, Division III.
December 7, 1978.
Rehearing Denied December 28, 1978.
Certiorari Denied March 12, 1979.
*1337 Robert B. Keating, Denver, for plaintiff-appellant.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Anthony M. Marquez, Asst. Atty. Gen., Denver, for defendants-appellees.
VanCISE, Judge.
Plaintiff Albert Marin's driving privileges were revoked by the defendant Department of Revenue pursuant to the implied consent law, § 42-4-1202(3), C.R.S.1973, for refusal to take a chemical sobriety test. Contending that he had not been driving and that, therefore, the implied consent law did not apply, Marin petitioned for judicial review as authorized by §§ 42-2-127 and 24-4-106, C.R.S.1973. The district court affirmed the revocation. Marin appeals, and we reverse.
An implied consent hearing was conducted by the Department. The only witnesses were Marin, his sister, and the arresting officer, Edward P. Carey.
Marin and his sister both testified that he had been drinking at a downtown restaurant, that at his request she came to the restaurant and drove him in his car to the alley behind his brother-in-law's house. The sister left him in his car with the motor running, got into her own car which was following with her daughter at the wheel, and went home. Marin stated that he then moved over to the driver's side of the car and began honking the horn to awaken his brother-in-law. He said that he had not driven the car after he was picked up by his sister.
Officer Carey testified that other police officers had told him that they discovered Marin behind the wheel in a car parked in the alley with the motor running, and that they had moved the car out of the alley into the street. Thereafter Carey arrived, noted the odor of alcohol, Marin's slurred and thick tongued speech, unstable walk, and watery and bloodshot eyes, and gave him a sidewalk sobriety test. Concluding that Marin might be under the influence of alcohol, Carey arrested him for investigation of driving under the influence. Enroute to and at the police station, Carey advised Marin of his Miranda rights and gave him the implied consent advisement. On being requested to take a blood, breath or urine test, Marin refused, saying he had not been driving.
The hearing officer made no finding as to whether Marin had in fact been driving. He found that the implied consent advisement had been properly given, and that Marin had refused the test. He then determined that the evidence "would have [led] Officer Carey to believe that Mr. Marin was in fact driving . . . [and that Carey] did have reasonable grounds to request a test." Marin's license was then revoked.
No issue is raised on this appeal as to the sufficiency of the arresting officer's reasonable grounds to believe that Marin had been driving while under the influence, the propriety of the implied consent advisement, or the fact that Marin refused to take the test. Marin contended at the revocation hearing *1338 and still contends that the sobriety test and license revocation provisions of the implied consent law are applicable only to one who was driving, and that, since he was not driving, the revocation of his license must be set aside.
The implied consent statute is consistent in specifying that its provisions apply to "[a]ny person who drives any motor vehicle." As set forth in People v. Brown, 174 Colo. 513, 485 P.2d 500 (1971), the basic provisions of that law are:
"1. A driver on a highway of this state shall be deemed to have given his consent to a chemical test of his blood, breath, or urine to determine the alcohol content of his blood, if charged with driving while under the influence of intoxicating liquor. 2. Preliminary to the chemical test, there must be an arrest of the driver based upon reasonable grounds to believe the driver was driving while under the influence of intoxicating liquor. 3. At the time of the request for the test, the driver must be advised . . . of the driver's rights under the statute and the probable consequences of a refusal to submit to such a test. 4. The choice is given the driver as to whether there shall be a blood test . . . 5. If the driver refuses to submit to the test requested, then the test shall not be given; and the arresting officer shall then file with the motor vehicle department a written report of the refusal, signed by the officer under oath, stating reasonable grounds for his belief that the driver was driving while under the influence of intoxicating liquor. 6. The department shall then issue a notice to the driver to show cause why his privilege to operate a motor vehicle should not be revoked at a hearing to be held. 7. If at the hearing reasonable grounds are not established by a preponderance of the evidence, the hearing shall terminate and no further administrative action shall be taken towards suspension of the license. 8. On the other hand, if reasonable grounds are established, the burden shifts to the driver to show on competent medical advice that his physical condition was such that a test would have been inadvisable, or that the administration of the test would not have been in conformity with the rules and regulations of the state board of health, or in conformity with the statute; and in default thereof, the department shall suspend the driver's license for six months. 9. The driver upon petition may have judicial review of the department's decision in the district court . . . ." (emphasis supplied)
The statute's purpose is to assist in the prosecution of the drinking driver. Calvert v. Motor Vehicle Division, 184 Colo. 214, 519 P.2d 341 (1974). Zahtila v. Motor Vehicle Division, Colo.App., 560 P.2d 847 (1977).
It is apparent that the concept of implied consent presupposes that the licensee was driving. If not, there is no consent. The refusal of a non-driver to take a sobriety test is not within the scope of the statute. The fact that the arresting officer had reasonable grounds to believe that the licensee had been driving under the influence may be sufficient to authorize the test but is not sufficient to support sanctions for failure to submit to a test if it is later determined that the licensee was not in fact driving. See Weber v. Orr, 274 Cal.App.2d 288, 79 Cal.Rptr. 297 (1969).
Here Marin submitted substantial evidence indicating that he was not driving. With that presentation the issue was properly raised at the hearing, and the burden of proof on that issue was then on the department. Vigil v. Motor Vehicle Division, 184 Colo. 142, 519 P.2d 332 (1974). It is conceivable that from the evidence presented the trier of the facts (here the hearing officer) could have found either way on the issue of whether Marin was driving, but there was no finding on the driving issue included in that officer's order.
Consequently, the judgment is reversed and the order of revocation is set aside. The cause is remanded to the trial court with directions to return the case to the Department for an additional finding, based on the existing record, as to whether Marin *1339 was driving, and for the entry of an appropriate new order based thereon. On written request of either party to the Department within 30 days from the date of the new order, the record, supplemented by the new finding and order, shall be recertified by the Department and transmitted to the trial court and then by it to this court for further review.
PIERCE, J., concurs.
RULAND, J., dissents.
RULAND, Judge, dissenting:
I respectfully dissent.
Where, as here, the language of the statute is plain, the meaning of the words is clear, and no absurdity is involved, the statute must be interpreted as written. See Harding v. Industrial Commission, 183 Colo. 52, 515 P.2d 95 (1973). The applicable portion of § 42-4-1202(3)(e), C.R.S.1973, provides:
"At such hearing, it shall first be determined whether the officer had reasonable grounds to believe that the said person was driving a motor vehicle while under the influence of, or impaired by, alcohol. If reasonable grounds are not established by a preponderance of the evidence, the hearing shall terminate, and no further action shall be taken." (emphasis supplied)
It is apparent that the statute does not require a finding as to whether the licensee was actually operating a vehicle. See Vigil v. Motor Vehicle Division, 184 Colo. 142, 519 P.2d 332 (1974). Rather, the statute unequivocally requires only a finding that the officer had reasonable grounds to believe that the licensee was operating a vehicle, and the hearing officer properly so found in this case. See e. g., Johnson v. Motor Vehicle Division, 38 Colo.App. 230, 556 P.2d 488 (1976).
As the majority opinion points out, the purpose of the statute is to assist in the prosecution of drunk driving, and it is evident that the General Assembly concluded that the test should be required in any case where there are reasonable grounds to believe that a licensee has been operating a vehicle while under the influence of alcohol. While the licensee may be inconvenienced by having to take the test in order to retain his license, the defense that he was not operating a motor vehicle is, of course, preserved for presentation during the trial of any charge arising out of the incident.
I would affirm the order.